15 F.3d 1092
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Carlos GONZALES, Defendant-Appellant.
 No. 92-50627.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 4, 1993.*
Decided Jan. 10, 1994.
 
 1
 Before: FLETCHER, D.W. NELSON, Circuit Judges, and WILL, District Judge**
 
 
 2
 MEMORANDUM***
 
 
 3
 Charles Carlos Gonzales ("Gonzales") was convicted of four counts of bank robbery and one count of aiding and abetting the commission of a bank robbery in violation of 18 U.S.C. Secs. 2113(a) and 2(a). The district court sentenced Gonzales to 163 months incarceration. Gonzales appeals only his sentence under United States Sentencing Guidelines.[1] We have jurisdiction under 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742. We affirm in part and vacate and remand in part.
 
 I. Adjustment for Express Threat of Death
 
 4
 We review de novo the district court's interpretation of the Sentencing Guidelines. See United States v. Blaize, 959 F.2d 850, 851 (9th Cir.), cert. denied, 112 S.Ct. 2954 (1992). We review the court's factual findings at sentencing for clear error. See United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992).
 
 
 5
 The district court adjusted Gonzales's sentence upward under U.S.S.G. Sec. 2B3.1(b)(2)(F) based on an express threat of death. Gonzales argues that it was his co-defendant, George Hernandez, who made the threat, and that Gonzales should not be held accountable for the threats made by Hernandez because it was not foreseeable that threats would be used during the commission of the bank robbery. Insofar as Gonzales aided and abetted the robbery, he may be held accountable for any reasonably foreseeable conduct undertaken by his co-defendant in furtherance of criminal activity that has been jointly undertaken. U.S.S.G. Sec. 1B1.3, comment. (n. 1).
 
 
 6
 The record supports a finding that it was foreseeable that threats would be made. Gonzales does not contest the record which shows that Hernandez, while committing robberies with him, had demonstrated a pattern of issuing such threats. That pattern, coupled with the common nature of the threat of death during robbery, defeats Gonzales' argument. Therefore, there was no clear error in the district court's factual findings, and no error in the district court's analysis and interpretation of the Sentencing Guidelines.
 
 
 7
 II. Adjustment for Reckless Endangerment During Flight
 
 
 8
 The district court adjusted Gonzales's sentence upward under U.S.S.G. Sec. 3C1.2 based on reckless endangerment during flight. Although Gonzales argues that the court sentenced him under Sec. 3C1.1, a review of the sentencing hearing transcript reveals that the enhancement was applied under Sec. 3C1.2. The Sentencing Commission intended Sec. 3C1.2 to apply to high speed chases that create reckless endangerment, and Sec. 3C1.1 specifically recognizes that Sec. 3C1.2 applies to these situations.
 
 
 9
 Gonzales claims that the upward adjustment is not supported by substantial evidence in the record because the evidence on which the district court relied is erroneous and unsubstantial. Specifically, he argues that: (1) he was unaware he was being followed and therefore had no reason to speed on Ventura Boulevard because Agent Sandoval was in an unmarked car; (2) he could not have travelled 80 miles per hour on Ventura Boulevard during rush hour traffic; (3) he could not have driven on the center divider of the San Diego Freeway because there is a cement wall on the middle of the freeway in the area he was driving; and (4) he did not run any red lights in attempting to escape. We are skeptical of the government's claim that Gonzales drove recklessly for several reasons. Although the government argues that he drove evasively down Ventura Boulevard to lose the police cars that were following him, Gonzales was being followed by unmarked cars. He claims he was unaware that he was being followed, and neither the government nor the court offered any explanation as to how Gonzales would know he was being followed by an unmarked car. In addition, although the presentence report indicates that Gonzales drove at 80 miles an hour, he departed from the bank at rush hour, and it is implausible that he could travel 80 miles per hour on a busy street such as Ventura Boulevard at this time of day. The presentence report does not indicate the source of its information and no other documents submitted by the government, or testimony by anyone in the record, suggests what the presentence report relied on to obtain this information. Once again, the government and the court declined to explain how this could occur. Furthermore, at the sentencing hearing, government counsel exaggerated the speed at which Gonzales was travelling, claiming he "often exceeded 100 miles an hour while travelling on Ventura Boulevard." This statement conflicts with the presentence report, and casts doubt on the government's description of the incident.
 
 
 10
 We also conclude that nothing in the record indicates that Gonzales drove recklessly while he was on the freeway.
 
 
 11
 Although the government claims that Gonzales drove on the "center divider" of the San Diego Freeway, the helicopter transcript only reports that Gonzales drove on the shoulder. No explanation was given as to how Gonzales could drive on the center divider when a cement wall was located there.
 
 
 12
 In addition, the transcript revealed that Gonzales was driving in the slow lanes of the highway for most of the pursuit, and only one comment was made during the pursuit regarding his speed. The helicopter officer simply stated, "he's clipping a pretty good speed here," E.C.R. 40, while Gonzales travelled on Balboa Boulevard. He does not say that Gonzales is exceeding the speed limit or driving recklessly.
 
 
 13
 Finally, there is no support in the record for the presentence report's finding that Gonzales ran red lights. Rather, the arrest report states that "officers observed defendants to cross four lanes of traffic and exit at Victory Boulevard off ramp. Officers exited also and at bottom of ramp observed defendants' vehicle to be boxed in with other vehicles stopped for red trilite signal. Officers blocked defendants' vehicle from the rear. Officers then conducted a felony vehicle stop." E.C.R. 46. This discrepancy between the arrest report and the presentence report casts further doubt on the overall reliability of the presentence report.
 
 
 14
 Neither the government nor the district judge offered any explanation for these discrepancies at the sentencing hearing. Based on the record, we conclude that the upward adjustment for reckless endangerment was clear error. Therefore, we vacate and remand to the district court for resentencing in a manner consistent with this ruling.
 
 
 15
 AFFIRMED IN PART, VACATED AND REMANDED IN PART.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Hubert L. Will, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The 1991 Guidelines are relevant here, because Gonzales was sentenced October 2, 1992, a month before the 1992 Guidelines went into effect